IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

_____

NUTRAMAX LABORATORIES, INC.    )
2208 Lakeside Boulevard    )
Edgewood, Maryland  21040    )
    )
and    )
    )
**NUTRAMAX LABORATORIES**    )
**VETERINARY SCIENCES, INC.**    )
946 Quality Drive    )
Lancaster, South Carolina  29720    )
    )
        **Plaintiffs**,    )
    )
**v.**    )    **Case No.** _____
    )
**VETERINARIAN**    )
**PHARMACEUTICAL LLC**    )
[address unknown]    
    )
       *Serve On:*    )
       Harvard Business Services, Inc., R.A.    )
       16192 Costal Hwy    )
       Lewes, Delaware  19958    )
    )
and    )
    )
**OPTIMUM TRADING CO LLC**    )
[address unknown]    
    )
       *Serve On:*    )
       Harvard Business Services, Inc., R.A.    )
       16192 Costal Hwy    )
       Lewes, Delaware  19958    )
    )
        **Defendants**.    )
_____ )

## VERIFIED COMPLAINT

    Plaintiffs, Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories

Veterinary Sciences, Inc. ("Nutramax Vet") ("Plaintiffs"), by and through their undersigned

counsel, file this Complaint against Veterinarian Pharmaceutical LLC ("Veterinarian Pharmaceuticals") and Optimum Trading Co LLC ("Defendants"), and allege as follows:

## NATURE OF THE CASE

1.      In this patent infringement and Lanham Act action, Plaintiffs seek injunctive relief and damages against Defendants who, operating under the misleading trade name "Veterinarian Pharmaceutical," sell a joint health supplement for dogs called Gluco[3]MSM ULTRA (hereinafter, the "Gluco[3] Product" or "Gluco[3"]).  Gluco[3] is formulated to be a knock-off of Nutramax Vet's product called Dasuquin®, which contains a patented formula and is the #1 veterinarian recommended joint health supplement brand in the United States.

2.      Defendants' Gluco[3] Product advertising is targeted toward Dasuquin® consumers and the veterinarians who recommend this well-respected product.  A review of Defendants' website, www.veterinarianpharmaceutical.com, and Defendant's Gluco[3] sales page on the internet retailer, www.amazon.com ("Amazon"), where Defendants direct consumers to purchase their infringing product, reveals that Defendants have placed an advertising bulls-eye on Dasuquin®.  *See* Copy of Website, attached at **Exhibit A**; *see also* copy of Amazon page selling the Gluco[3] Product, captured on May 29, 2015, attached at **Exhibit B**.

3.      On information and belief, however, Gluco[3] is both infringing and inferior to Dasuquin® in quality and purity, and thus, efficacy.  Yet, Defendants make false and misleading statements to give consumers and veterinarians the misimpression that Gluco[3] is equivalent to Dasuquin® in every way except its retail price.

4.      Defendants are unlawfully capitalizing on Dasuquin's reputation and goodwill to sell an inferior product to Dasuquin® consumers.  Aside from their misleading trade name, "Veterinarian Pharmaceuticals," Defendants employ a number of false and misleading

advertising tactics to target Dasuquin® consumers.  For example, Defendants make false and misleading comparisons between their Gluco[3] Product and Dasuquin®, including that the two products are of identical or substantially similar quality and efficacy; that Gluco[3] is equivalent to or a suitable substitute or replacement for Dasuquin®; and that consumers who purchase Gluco[3] will receive a substantially similar and effective product when compared to Dasuquin® for 30% less of the cost.

5.      Defendants also purchase sponsored links on the most popular search engine websites, including Google® and Bing®, so that when a consumer searches for Dasuquin®, Defendants' Gluco[3] Product appears at the top of the search page as a "Dasuquin Substitute," with a link to Defendants' Gluco[3] Amazon sales page.

6.      Upon information and belief, Defendants also distributed and continue to distribute free bottles of the Gluco[3] Product to dozens, if not hundreds of people, including residents of Maryland, in exchange for the recipients' agreements to author Amazon "reviews" of the Gluco[3] Product.  These purported "consumer reviews" of Defendants' product on Amazon are multiplying at a rate that is unattainable through non-misleading and fair business practices, are overwhelmingly positive, and include glowing reviews from Maryland residents.

7.      Each of these statements and advertising tactics, among others, misrepresents the nature, characteristics and quality of Defendant's product and Nutramax Vet's Dasuquin® product, in violation of the false advertising and unfair competition prohibitions in the Lanham Act, 15 U.S.C. § 1101, *et seq.*  Defendants' deceitful actions also constitute common law unfair competition.

8.      Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting Defendants and all others acting in concert or participation with them from infringing Nutramax

3

Labs' patents, continuing to make false and misleading statements about Defendants' own product and about Nutramax Vet's Dasuquin®, and unfairly competing with Dasuquin®. Plaintiffs also are entitled to damages, enhanced damages, and attorneys' fees.

## THE PARTIES

9. Nutramax Labs is a Maryland corporation with its principal place of business in Edgewood, Maryland. Nutramax Labs is the assignee of all of the patents that form the basis for this Action and it owns the federal trademark registration for the mark, Dasuquin®. Nutramax Labs has spent decades and millions of dollars researching, developing, marketing, distributing, and selling high-quality and well-respected nutritional supplement products for humans and animals throughout the United States and around the world. Nutramax Labs is the parent company of co-plaintiff, Nutramax Vet.

10. Nutramax Vet is a South Carolina corporation with its principal place of business in Lancaster, South Carolina. It is a wholly-owned subsidiary of Nutramax Labs, from which it licenses all patents and the Dasuquin® trademark that are pertinent to this Civil Action. Nutramax Vet pays Nutramax Labs patent and trademark royalties that are calculated based upon Dasuquin® sales.

11. Nutramax Vet researches, develops, markets and sells nutritional supplement products for dogs and other animals, including Dasuquin® and another joint health supplement for animals called Cosequin®, which has been on the market for more than two decades, and is the #1 veterinarian recommended retail joint health supplement.

12. Upon information and belief, Defendant Veterinarian Pharmaceutical is a Delaware limited liability company. Its principal place of business and identities of its members, however, are not published by the Delaware Secretary of State, and Plaintiffs have not been able

to determine this information through independent research and investigation.

13.    Upon information and belief, Defendant Optimum Trading Co is a Delaware limited liability company.  Its principal place of business and identities of its members, however, are not published by the Delaware Secretary of State, and Plaintiffs have not been able to determine this information through independent research and investigation.

14.    On further information and belief, Veterinarian Pharmaceutical and Optimum Trading own and/or operate the website domain, www.veterinarianpharmaceutical.com, on which Defendants operate under the trade name, "Veterinarian Pharmaceutical," advertise the Gluco[3] Product by comparing it directly to Dasuquin®, and direct visitors to purchase Gluco[3] on Amazon.  *See* Ex. B.

15.    The www.veterinarianpharmaceutical.com website indicates that Veterinarian Pharmaceutical's "Customer Service Department" is located in Las Vegas, Nevada, but the website does not provide a physical address.  The "About Us" page of the website, however, states that, "We're located in the beautiful city of Scottsdale Arizona." The website also does not provide a physical address, and calls to the phone number provided on the website go directly to voicemail.  The Gluco[3] Product label also does not contain a street address.

16.    The WHOIS record available from the Internet Corporation for Assigned Names and Numbers or ICANN with respect to the www.veterinarianpharmaceutical.com website states that the registrant's information is "private" and indicates that the domain was registered on April 4, 2015.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, and pursuant to 28 U.S.C. §

1338(a), pursuant to which the Court has original jurisdiction of any civil action related to patents.

18.     This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b) because this is a civil action not founded solely on diversity of citizenship and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Maryland, including upon information and belief, Defendants' entry of contracts with Maryland consumers who, in exchange for the receipt of free product, agree to author Amazon reviews of the Gluco$^3$ Product. Defendants also are shipping the patent-infringing Gluco$^3$ Product to Maryland for this State's residents to review the product.   Defendants knowingly direct their wrongful conduct at Nutramax Labs in Maryland and have engaged Maryland consumers in their deceitful plan to obtain hundreds of artificially-inflated reviews of their product on Amazon.   Defendants therefore know and appreciate – or should know and appreciate – that the monetary damage and irreparable injury that their actions would cause to Plaintiffs would occur in Maryland.

## ALLEGATIONS OF FACT

**A.     Patent Infringement Allegations**

19.     Nutramax Labs is the assignee of United States Letters Patent 6,797,289 B2 issued on September 28, 2004 and entitled "Use of anabolic agents, anti-catabolic agents, antioxidant agents, and analgesics for protection, treatment and repair of connective tissues in humans and animals"  (hereinafter, the "'289 Patent").  A copy of the '289 Patent is attached to this Complaint at **Exhibit C**.

20.     Nutramax Labs also is the assignee of United States Letters Patent 8,753,697 B2 issued on June 17, 2014 and entitled "Use of anabolic agents, anti-catabolic agents, antioxidant agents, and analgesics for protection, treatment and repair of connective tissues in humans and

animals" (hereinafter, the "'697 Patent"). A copy of the '697 Patent is attached to this Complaint at **Exhibit D**.

21.     Nutramax Labs granted non-exclusive licenses to the '289 Patent and the '697 Patent to Nutramax Vet.

22.     Nutramax Vet's product, Dasuquin®, includes a combination of ingredients in quantities that fall within the claims of the '289 Patent and the '697 Patent.

23.     The '289 Patent contains the following independent and dependent claims:

<u>Claim 1</u>:     A composition for the treatment, repair or prevention of damage to connective tissue comprising: a synergistic combination of an aminosugar and avocado/soybean unsaponifiables.

<u>Claim 2</u>:     The composition of claim 1, wherein the aminosugar is selected from the group consisting of glucosamine, glucosamine salts, and mixtures thereof.

<u>Claim 3</u>:     The composition of claim 2, wherein the glucosamine salt is selected from the group consisting of glucosamine hydrochloride, glucosamine sulfate, N-acetylglucosamine and salts thereof.

<u>Claim 4</u>:     The composition of claim 1, wherein the synergistic combination is administered orally, sublingually, nasally, gutturally, rectally, transdermally, or parenterally.

*See* '289 Patent, at Exh. C.

24.     The '697 Patent contains the following independent and dependent claims:

<u>Claim 1</u>:     A composition comprising avocado/soybean unsaponifiables (ASU) and a glycosaminoglycan, wherein the ASU and the glycosaminoglycan are present in a synergistically effective amount.

Claim 2:        The composition according to claim 1, wherein the glycosaminoglycan comprises a natural, synthetic or semi-synthetic glycosaminoglycan, a glycosaminoglycan-like compound, a glycosaminoglycan precursor or fragments of a glycosaminoglycan.

Claim 3:        The composition according to claim 1, wherein the glycosaminoglycan has been chemically modified by one or more of esterification, sulfation, polysulfation, acetylation and methylation.

Claim 4:        The composition according to claim 1, wherein the glycosaminoglycan is chondroitin or a salt thereof, hyaluronic acid, or a mixture of these.

Claim 5:        The composition according to claim 1, wherein the glycosaminoglycan is chondroitin sulfate.

Claim 6:        The composition of claim 1, wherein a dose of the avocado/soybean unsaponifiables ranges from about 5 milligrams to about 5 grams.

Claim 7:        The composition of claim 1, wherein a dose for a small animal of the avocado/soybean unsaponifiables ranges from about 5 milligrams to about 1000 milligrams.

Claim 8:        The composition of claim 1, wherein a dose for a human of the avocado/soybean unsaponifiables ranges from about 50 milligrams to about 1500 milligrams.

Claim 9:        The composition of claim 1, wherein a dose for a large animal of the avocado/soybean unsaponifiables ranges from about 100 milligrams to about 5 grams.

Claim 10:       The composition of claim 1, wherein a dose of the avocado/soybean unsaponifiables ranges from about 1 mg/kg to about 25 mg/kg.

<u>Claim 11</u>:      The composition of claim 1, wherein a dose of the avocado/soybean unsaponifiables for a small animal ranges from about 0.5 mg/kg to about 25 mg/kg.

<u>Claim 12</u>:      The composition of claim 1, wherein a dose of the avocado/soybean unsaponifiables for a human ranges from about 0.5 mg/kg to about 25 mg/kg.

<u>Claim 13</u>:      The composition of claim 1, wherein a dose of the avocado/soybean unsaponifiables for a large animal ranges from about 0.5 mg/kg to about 25 mg/kg.

<u>Claim 14</u>:      The composition of claim 1, wherein a dose of the glycosaminoglycan component ranges from about 15 milligrams to about 12 grams.

<u>Claim 15</u>:      The composition of claim 1, wherein a dose of the glycosaminoglycan component for a small animal ranges from about 15 milligrams to about 2 grams.

<u>Claim 16</u>:      The composition of claim 1, wherein a dose of the glycosaminoglycan component for a human ranges from about 75 milligrams to about 4 grams.

<u>Claim 17</u>:      The composition of claim 1, wherein a dose of the glycosaminoglycan component for a large animal ranges from about 300 milligrams to about 12 grams.

<u>Claim 18</u>:      The composition of claim 1, wherein a dose of the glycosaminoglycan component for a small animal ranges from about 1 mg/kg to about 75 mg/kg.

<u>Claim 19</u>:      The composition of claim 1, wherein a dose of the glycosaminoglycan component for a human ranges from about 1 mg/kg to about 75 mg/kg.

<u>Claim 20</u>:      The composition of claim 1, wherein a dose of the glycosaminoglycan component for a large animal ranges from about 1 mg/kg to about 75 mg/kg.

<u>Claim 21</u>:      A method of treating or repairing damage to connective tissue in humans and animals comprising administering a composition according to claim 1 to a human or animal in need thereof.

*See* '697 Patent, at Exh. D.

25.    Defendants, both individually and collectively, make or have made, offer to sell and sell, or participate, direct and control the making, advertising and sale of, the Gluco$^3$ Product.

26.    Defendants' label and advertising (both on Amazon and the website, www.veterinarianpharmaceutical.com) for the Gluco$^3$ Product represent that:

        A.    the Gluco$^3$ Product contains, among other ingredients, 900 mg of glucosamine, 350 mg Sodium Chondroitin Sulfate and 90 mg of avocado/soybean unsaponifiables;

        B.    the Gluco$^3$ Product is a "joint health supplement for large dogs (60lbs or larger);"

        C.    the Gluco$^3$ Product "nourishes the tissue that lines the joints."

27.    Defendants also advertise that consumers or potential consumers of Gluco$^3$ Product should, "COMPARE ACTIVE INGREDIENTS TO DASUQUIN MSM® BY NUTRAMAX®" and that Gluco$^3$, "was specially formulated as an extra strength joint supplement for dogs with a very close ingredient match to Nutramax DASUQUIN with MSM for Large Dogs®[.]" (emphasis added).

28.    The advertised combination of an aminosugar (glucosamine) and avocado/soybean unsaponifiables ("ASU"), in Gluco$^3$, which is administered orally for the purpose of "support for hip & joints as well as arthritis & pain relief," falls within at least one or more of the above-recited claims of the '289 Patent.

29.    The advertised combination of ASU and a glycosaminoglycan (Chondroitin Sulfate) in Gluco$^3$, in the quantities represented on Defendants' product label and in other advertising for Gluco$^3$, falls within at least one or more of the above-recited claims of the '697

Patent.

**B.      Lanham Act Allegations**

30.      Nutramax Labs began doing business more than 25-years ago.  During that time it has gained and maintained a well-deserved reputation for researching and developing high-quality, effective nutritional supplement products that benefit animals and humans.  Its first animal product, called Cosequin®, was first sold more than 25-years ago and it remains the #1 veterinarian-recommended retail brand of joint health supplement in the United States.

31.      Nutramax Vet's Dasuquin® product is the #1 veterinarian recommended joint health supplement brand in the United States.

32.      Plaintiffs' animal products, including Dasuquin®, are widely regarded as the gold standard in the nutritional supplement industry because they are supported by peer-reviewed, published research and studies, contain high-quality, verified and validated active ingredients from reputable and reliable sources, and are manufactured in accordance with strict standards that assure consumers receive a high-quality, safe product.

33.      In fact, the active compounds used in Dasuquin® - including NMX1000® ASU, FCHG49® glucosamine and TRH122® sodium chondroitin sulfate – are tested and validated to adhere to strict purity and quality standards, which differentiates Dasuquin® from many non-infringing products on the market that use inferior ingredients from unverified or disreputable suppliers.  These specific compounds used in Dasuquin® have been researched, tested and validated, and are shown in published research to work synergistically to improve joint and cartilage health in animals.

34.      By virtue of the quality of Dasuquin® and the research that supports the product's efficacy, and the actual reduction in joint discomfort that countless dogs and other animals have

experienced when taking Dasuquin®, the product has achieved a large amount of goodwill and name recognition with both consumers and within the veterinarian community.

35.     Unfortunately, the nutritional supplement industry, including the animal joint health supplement industry, is plagued by companies that use ingredients and combinations of ingredients that are not validated, researched or tested, to lower production costs and increase profitability.

36.     Because of Dasuquin's reputation for quality and research, its status as the #1 veterinarian recommended joint health supplement, and the actual positive experience that millions of animals have experienced because of the product, unscrupulous competitors sometimes target Dasuquin® in false and misleading comparative advertising to try to boost sales of their own, inferior animal joint health products.  Defendants and their Gluco[3] Product are the latest examples.

37.     Defendants' "Veterinarian Pharmaceuticals" trade name and website domain address obviously are intended to give consumers the misleading impression that Defendants are a pharmaceutical company that makes medications that veterinarians prescribe, and to misleadingly imply that veterinarians who recommend Dasuquin® would substitute the Gluco[3] Product for Dasuquin®.

38.     In this misleading context, Defendants' Gluco[3] Product directly targets Nutramax' #1 veterinarian recommended product, Dasuquin®, in nearly every advertising claim and method that Defendants make and employ.

39.     On Amazon, which is the only retailer that appears to be selling the Gluco[3] Product, Defendants make a direct comparison of their Gluco[3] Product to Dasuquin® and falsely contend that the glucosamine in their product is "veterinarian quality;" contains the "same active

ingredients as Nutramax Dasuquin with MSM®," and that the ingredients in Gluco[3] are "put together under our proprietary pharmaceutical grade formula."  *See*  Exh. B.

40.     Defendants also falsely contend that Gluco[3] is, "a world class pharmaceutical grade health supplement for your dog at prices 30% less than the other companies" – which "companies" Defendants identify only to be Nutramax and its Dasuquin® product.  *See id.*

41.     Indeed, the entire look and feel of Defendants' Gluco[3] Product advertising on Amazon and their webpage, www.veterinarianpharmaceutical.com, is clearly intended to give the false and misleading impression that Gluco[3] is the generic equivalent to Dasuquin® in every material way and, "was specially formulated as an extra strength joint supplement for dogs with a very close ingredient match to Nutramax DASUQUIN with MSM for Large Dogs®," except that it costs 30% less. *See* Exh. A.

42.     Upon information and belief, however, Defendants' Gluco[3] Product does not contain the same quality, purity or researched active ingredients, including glucosamine, chondroitin sulfate and/or ASU, as Dasuquin®, nor is Gluco[3] manufactured in accordance with the strict quality and safety standards and procedures to which Dasuquin® is subjected.

43.     Defendants also mislead consumers to believe that the reason that Gluco[3] costs less than Dasuquin® is because Defendants "sell directly to you – no middle men.  You order directly through Amazon for fast shipping; this allows us to offer high quality ingredients at a fraction of the price."  In truth and reality, however, Gluco[3] costs less because, among other reasons, it contains inferior ingredients that are not validated for purity, bioactivity, or quality, and which come from unreliable and unreputable sources or manufacturers, and is not subjected to the same costly battery of quality, purity, safety and other laboratory testing that every batch of Dasuquin® and its raw ingredients undergo.

44.   In furtherance of their false and misleading comparisons to Dasuquin®, Defendants appear to have purchased so-called "sponsored links" on Amazon and on search engines such as Bing® and Google®, so that when consumers search for Dasuquin® product, Defendants' Gluco[3] Product appears as a suggested replacement or alternative product.  On the Bing® search engine, for example, Defendants Gluco[3] Product is advertised as a "Dasuquin substitute."  *See* Image of Bing Search for Dasuquin, attached at **Exhibit E**.  Similarly, when a consumer performs a search on Amazon for "Dasuquin," Defendants' Gluco[3] Product appears as a "Less Expensive Option" with a link to the Gluco[3] Product page on Amazon.   *See* Image of Amazon Search for Dasuquin, attached at **Exhibit F**.

45.   A search on Amazon for "Dasuquin" results in the display of Defendants' Gluco[3] Product at the top of the search results page on a consumer's computer screen, with the false and misleading statement that the Gluco[3] Product is "Lower Cost, High Quality" – with a link to Defendants' product.

46.   Defendants are also, upon information and belief, providing free product to encourage or induce others to provide fake, misleading and overwhelmingly positive customer reviews on Amazon.  For example, Defendants are giving away the Gluco[3] Product to consumers who agree to write Amazon reviews.

47.   Using these unfair practices, the Gluco[3] Product has received on average more than a dozen positive "reviews" on Amazon each day in the first few weeks that it has been sold, and as of June 2, 2015, had received more than 180 reviews, of which only five were 3-stars or fewer (out of 5 stars, which is the highest Amazon rating).

48.   Nearly every one of these reviews are by consumers who received Gluco[3] for free, and the profiles of many of these reviewers indicates that they are habitual Amazon reviewers

who have authored dozens, if not hundreds of glowing reviews in exchange for free product.  For example, one reviewer from Maryland, Amy Tucker, is ranked #1,934 of all reviewers on Amazon, which is a high ranking when considering that millions of reviewers have authored reviews of products sold on or by Amazon.  Of the hundreds of reviews that Ms. Tucker has authored, nearly all were, according to her reviews, in exchange for receiving free products, and nearly every one of her reviews gives the free product a five (out of five) star rating and a glowing endorsement.  Ms. Tucker's glowing review of Defendants' Gluco[3] Product authored on May 25, 2015, is predictably positive.  *See* Recent Reviews by Ms. Tucker, a PDF of which is attached to this Complaint at **Exhibit G.**[1]

49.    Some of these Amazon "reviews" even indicate that the "consumer" had purchased or recommend purchasing Gluco[3] Product instead of Dasuquin®.

50.    The specific instances of patent infringement and false and misleading advertising described above are provided as examples.  On information and belief, Defendants have engaged in other infringing offers for sale, uses, importations, makings, and/or sales and other false and misleading advertising practices.

### COUNT I
### DIRECT PATENT INFRINGEMENT
#### ('289 Patent)

51.    Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 50 as if stated fully herein.

52.    Defendants infringe one or more claims of the '289 Patent by making, selling, offering to sell and distributing the Gluco[3] Product, which is advertised to contain a combination of an aminosugar (*i.e.,* glucosamine) and avocado/soybean unsaponifiables in quantities that

---

[1]  Ms. Tucker's review of Gluco[3] appears on p. 8 of 21 of Exhibit G, and is highlighted for ease of reference.  The last page of the exhibit (p. 21 of 21) contains the complete Gluco[3] Product review that Ms. Tucker posted to Amazon.

would, if advertised truthfully, constitute a synergistic combination of said compounds, without any license, agreement or other consent from Plaintiffs.

53.    Defendants have no right or license to sell a product that infringes the '289 Product, and Plaintiffs have not consented to Defendants' infringement.

54.    Plaintiff Nutramax Vet sells its product, Dasuquin®, which contains a synergistic combination of an aminosugar and avocado/soybean unsaponifiables compounds that fall within the claims of the '289 Patent.

55.    Defendants' Gluco[3] Product and Dasuquin® are direct competitors in the marketplace, and Defendants have and are specifically targeting their advertising to draw in Dasuquin® customers and veterinarians who recommend Nutramax Vet's product.

56.    At all times relevant hereto, every container of Dasuquin® and the description of Dasuquin® on Plaintiffs' website, www.nutramaxlabs.com, has been marked with the '289 Patent.

57.    Defendants received actual notice of the '289 Patent prior to the initiation of the present lawsuit and have knowledge of the '289 Patent at least through the filing of the present lawsuit, but nevertheless willfully continue to make, offer to sell and to sell their infringing Gluco[3] Product.

58.    Plaintiffs are and have been irreparably damaged by Defendants' infringement and unless Defendants' infringing activities are enjoined by this Court, Plaintiffs will continue to suffer monetary damage, market price erosion, loss of market share, and irreparable harm to their reputation, relationships and goodwill with their customers, vendors, distributors, medical professionals (including veterinarians) and others.

WHEREFORE, Plaintiffs respectfully pray the Court award them the following relief

jointly and severally against the Defendants:

A.   Enter a judgment that Defendants have infringed the '289 Patent;

B.   A preliminary and a final, permanent injunction under 35 U.S.C. § 283 restraining the Defendants and those in privity with them from making, using selling, distributing, importing, having made, having sold, having distributed or having imported, any product or composition that infringes the '289 Patent, including the Gluco[3] Product;

C.   Damages against Defendants pursuant 35 U.S.C. § 284 that are adequate to compensate Plaintiffs for the infringement, but in no event less than a reasonable royalty for the use made of the invention by each infringer, together with interest and costs;

D.   Enter a judgment that Defendants' infringement was and is willful from the time Defendants became aware of the infringing nature of their products and award treble damages for the period of such willful infringement of the '289 Patent pursuant to 35 U.S.C. § 284;

E.   Prejudgment interest to Plaintiffs pursuant to 35 U.S.C. § 284;

F.   Enhanced damages to Plaintiffs as the court deems just;

G.   Declare this case exceptional and award Plaintiffs' reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

H.   Any other relief that the Court deems just.

## COUNT II
## DIRECT PATENT INFRINGEMENT
### ('697 Patent)

59.   Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 58 as if

stated fully herein.

60.     Defendants infringe one or more claims of the '697 Patent by making, selling, offering to sell and distributing the Gluco$^3$ Product, which is advertised to contain a combination of a glycosaminoglycan (*i.e.,* chondroitin sulfate) and avocado/soybean unsaponifiables, in quantities that if advertised truthfully, would be present in a synergistically effective amount and would fall within the dose range of one or more claims of the '697 Patent.

61.     Defendants have no right or license to sell a product that infringes the '697 Product, and Plaintiffs have not consented to Defendants' infringement.

62.     Plaintiff Nutramax Vet sells its product, Dasuquin®, which contains a composition comprising avocado/soybean unsaponifiables and a glycosaminoglycan in quantities that constitute a synergistically effective amount.   Accordingly, Dasuquin® contains a combination of compounds that fall within the claims of the '697 Patent.

63.     Defendants' Gluco$^3$ Product and Dasuquin® are direct competitors in the marketplace.

64.     At all times relevant hereto, every container of Dasuquin® and the description of Dasuquin® on Plaintiffs' website, www.nutramaxlabs.com, has been marked with the '697 Patent.

65.     Defendants received actual notice of the '697 Patent prior to the initiation of the present lawsuit and have knowledge of the '697 Patent at least through the filing of the present lawsuit, but nevertheless willfully continue to make, offer to sell and to sell their infringing Gluco$^3$ Product.

Plaintiffs are and have been irreparably damaged by Defendants' infringement and unless Defendants' infringing activities are enjoined by this Court, Plaintiffs will continue to suffer

monetary damage, market price erosion, loss of market share, and irreparable harm to their reputation, relationships, and goodwill with their customers, vendors, distributors, medical professionals (including veterinarians) and others.

WHEREFORE, Plaintiffs respectfully pray the Court award them the following relief jointly and severally against the Defendants:

I.      Enter a judgment that Defendants have infringed the '697 Patent;

J.      A preliminary and a final, permanent injunction under 35 U.S.C. § 283 restraining the Defendants and those in privity with them from making, using selling, distributing, importing, having made, having sold, having distributed or having imported, any product or composition that infringes the '697 Patent, including the Gluco[3] Product;

K.      Damages against Defendants pursuant 35 U.S.C. § 284 that are adequate to compensate Plaintiffs for the infringement, but in no event less than a reasonable royalty for the use made of the invention by each infringer, together with interest and costs;

L.      Enter a judgment that Defendants' infringement was and is willful from the time Defendants became aware of the infringing nature of their products and award treble damages for the period of such willful infringement of the '697 Patent pursuant to 35 U.S.C. § 284;

M.      Prejudgment interest to Plaintiffs pursuant to 35 U.S.C. § 284;

N.      Enhanced damages to Plaintiffs as the court deems just;

O.      Declare this case exceptional and award Plaintiffs' reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

P.      Any other relief that the Court deems just.

## COUNT III: FALSE ADVERTISING
### (15 U.S.C. § 1125(a)(1)(B))

66.     Plaintiffs repeat and incorporate by reference all of the allegations set forth in paragraphs 1 through 65 above as if fully set forth herein.

67.     By and through their actions described and set forth herein, Defendants have made and continue to make false or misleading descriptions of fact or representations of fact in commercial advertisements about their own Gluco[3] Product and about Nutramax Vet's Dasuquin® product, including without limitation, false and misleading representations about the characteristics and qualities of the Gluco[3] Product, and false and misleading comparisons between the characteristics and qualities of the Gluco[3] Product and Dasuquin®.

68.     Defendants' misrepresentations are material, in that they are likely to influence the purchasing decisions of consumers.

69.     Defendants' misrepresentations actually deceive or have the tendency to deceive a substantial segment of their audience, which includes consumers and potential consumers of Nutramax's Dasuquin® product, and veterinarians and other medical professionals who recommend Dasuquin®.

70.     Defendants placed the false or misleading statements in interstate commerce.

71.     Plaintiffs have been and are likely to be damaged and irreparably injured as a result of Defendants' misrepresentations, either by direct diversion of sales or by a lessening of goodwill associated with its product, Dasuquin®.

72.     Defendants acted and continue to act willfully and intend to confuse or deceive the consuming public.

WHEREFORE, Plaintiffs respectfully pray the Court award them the following relief jointly and severally against the Defendants:

A.    Enter a judgment that Defendants to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiffs by using false, deceptive, or misleading descriptions or representations of fact that misrepresent the nature, quality, and characteristics of both Defendants' Gluco[3] Product and Nutramax Vet's Dasuquin® Product;

B.    A preliminary and permanent injunction restraining Defendants and any entities or individuals acting in concert or participation with them, from making any statement that contends or implies that Defendants' Gluco[3] Product is the equivalent of or a substitute for Dasuquin®, including any statement that claims or implies that the two products have identical or similar ingredients;

C.    Order the delivery or destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements (including electronically stored information) in Defendants' possession, custody or control that bear any statement or implication that Gluco[3] Product is the equivalent of, or substantially the same as, Dasuquin®;

D.    A preliminary and permanent injunction restraining Defendants and any entities or individuals acting in concert or participation with them, from employing any advertising tactic or from engaging in any other action that the Court finds to be deceptive, deceitful and unfair as against the

Plaintiffs, including without limitation the practice of providing free product in exchange for Amazon reviews;

E.   Award Plaintiffs Defendants' profits earned from advertisement and sale of Gluco$^3$ Product and any damages sustained by Plaintiffs as a result of Defendants' false and misleading advertising;

F.   Award Plaintiffs three times any profits or damages, whichever is greater, that the Court awards to Plaintiffs pursuant to the immediately-preceding paragraph;

G.   Require Defendants to pay Plaintiffs' reasonable attorneys' fees in pursuing this Action;

H.   Award to Plaintiffs prejudgment interest pursuant to 15 USC §1117(b) at an annual interest rate established under section 6621(a)(2) of the Internal Revenue Code of 1986 [26 USC §6621(a)(2)], commencing on the date of service of this Complaint;

I.   Award Plaintiffs the costs of this Action; and

J.   Order such other relief as the Court deems just.

## COUNT IV: UNFAIR COMPETITION

73.   Plaintiffs repeat and incorporate by reference all of the allegations set forth in paragraphs 1 through 72 above as if fully set forth herein.

74.   Defendants have a legal duty to refrain from damaging Plaintiffs' business through and by fraud, deceit, deception, trickery or unfair methods of any sort.

75.   By virtue of the actions and advertising tactics described in this Complaint, Defendants have breached and unless enjoined, will continue to breach this duty and to unfairly

compete with Plaintiffs as a result.

76.    Defendants' unfair competition is directly targeted and intended to damage or tarnish the goodwill, reputation and sales of Nutramax Vet's product, Dasuquin®, and Defendants' wrongful actions have caused and will continue to cause Plaintiffs damage and irreparable injury, including by direct diversion of sales or by a lessening of goodwill associated with Dasuquin®.

WHEREFORE, for the reasons set forth herein, Plaintiffs pray that judgment be entered by this Court in their favor and against the Defendants, jointly and severally, and awarding the following relief:

A.    Enter judgment that Defendants to have unfairly competed against Plaintiffs by using fraud, deceit, deception, trickery or unfair methods that are unlawful with respect to Defendants' Gluco[3] Product, with the intent and purpose of damaging the sales and goodwill of Nutramax Vet's Dasuquin® Product;

B.    A preliminary and permanent injunction restraining Defendants and any entities or individuals acting in concert or participation with them, from and against any advertising methods or other actions that constitute unfair competition with respect to Dasuquin®, including without limitation the practice of providing free product in exchange for Amazon reviews;

C.    Order the destruction of all labels, signs, prints, packages, wrappers, receptacles, and advertisements (including electronically stored information) in the possession, custody or control of Defendants,

which reflect, employ or enable Defendants to unfairly compete with Plaintiffs;

D.      A preliminary and permanent injunction restraining Defendants and any entities or individuals acting in concert or participation with them, from employing deceptive, deceitful and unfair methods of competition;

E.      Award Plaintiffs Defendants' profits earned from advertisement and sale of Gluco3 Product and any damages sustained by Plaintiffs as a result of Defendants' false and misleading advertising;

F.      Award Plaintiffs three times any profits or damages, whichever is greater, that the Court awards to Plaintiffs pursuant to the immediately-preceding paragraph;

G.      Require Defendants to pay Plaintiffs' reasonable attorneys' fees in pursuing this Action;

H.      Award Plaintiffs the costs of this Action; and

I.      Order such other relief as the Court deems just.

## **PRAYER FOR JURY TRIAL**

Plaintiffs respectfully pray for a trial by jury.

Respectfully submitted,

Date:  June 3, 2015                    _____/s/_____
                                       Joshua A. Glikin (#26852)
                                       glikin@bowie-jensen.com
                                       Patrick R. Buckler (#25943)
                                       buckler@bowie-jensen.com
                                       BOWIE & JENSEN, LLC
                                       29 W. Susquehanna Avenue, Suite 600
                                       Towson, Maryland  21204
                                       (410) 583-2400

Fax: (410) 583-2437

*Counsel for Plaintiffs, Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*